IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:19-CT-3153-FL

| | |
|---|---|
| EDWARD V. SHIPMAN, | ) |
| Plaintiff, | ) |
| v. | ) ORDER |
| KELVIN JONES, | ) |
| Defendant.[1] | ) |

This matter is before the court on defendant's motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 (DE 27). Plaintiff did not respond to the motion, and in this posture, the issues raised are ripe for ruling. For the reasons that follow, the court grants the motion.

### STATEMENT OF THE CASE

Plaintiff, a state inmate proceeding pro se, commenced this action by filing complaint on June 3, 2019, asserting claims for violations of his constitutional rights pursuant to 42 U.S.C. § 1983. Following an initial period of frivolity review, plaintiff was allowed to proceed with his Eighth Amendment claim against defendant, a corrections officer at the Maury Correctional Institution ("Maury CI") during the relevant time period. Plaintiff sues defendant in both his individual and official capacities and alleges defendant used excessive force against him when defendant hit plaintiff with a baton numerous times on his arms, legs, and sides. As relief, plaintiff

---

[1] Plaintiff lists "Officer Jones" as defendant in this action. However, defendants respond that "Officer Jones's" full name is "Kelvin Jones." Accordingly, the court will order the clerk to amend "Officer Jones" to "Kelvin Jones" on the docket."

seeks "whatever this court deems applicable." (Compl. (DE 1) at 8).

Following a period of discovery, and in accordance with the court's amended case management order, defendant filed the instant motion for summary judgment on March 16, 2021. In support of the motion, defendants rely upon a memorandum of law, statement of material facts, and appendix of exhibits thereto, comprising the following: 1) affidavit of John R. Gray, the correctional superintendent at Maury CI; 2) North Carolina Department of Correction Policy and Procedures; 3) Maury CI Standard Operating Procedures; 4) video footage recorded on November 10, 2017 ("Video Footage"); 5) incident report; 6) affidavit of defendant; 7) affidavit of Kennard Hutchinson, a correctional sergeant at Maury CI; and 8) affidavit of Brandon Connor, a correctional lieutenant at Maury CI.

On March 17, 2021, the court provided plaintiff notice of the motion pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975). The notice identified the response deadline and stated in bold type, "If you fail to respond to the motion, the court may grant the motion and enter summary judgment against you." (Roseboro Ltr. (DE 32) at 1). As noted, plaintiff did not respond to defendant's motion.

## STATEMENT OF THE FACTS

The undisputed facts underlying plaintiff's claims are set forth below.[2] At the time of the alleged incident, petitioner was housed in Maury CI. (See Gray Aff. (DE 30-1) ¶¶ 3, 8; Def. Aff. (DE 30-6) ¶¶ 3, 4; Hutchinson Aff. (DE 30-7) ¶¶ 3, 4; Connor Aff. (DE 30-8) ¶¶ 3, 4). On

---

[2] Plaintiff did not respond to the instant motion or file verified complaint. Pursuant to Local Civil Rule 56.1(a)(1)–(2), a memorandum opposing a motion for summary judgment must be supported by a separate statement of material facts that includes response to each numbered paragraph in the moving party's statement. "Each numbered paragraph in the moving party's statement of material facts will be deemed admitted for purposes of the motion unless it is specifically controverted . . . in the opposing statement." Local Civil Rule 56.1(a)(2).

2

November 10, 2017, at approximately 10:30 a.m., a fellow inmate, Ronnie Covington ("Covington"), verbally confronted plaintiff, ran down a hallway, and assaulted plaintiff. (Gray Aff. (DE 30-1) ¶¶ 14-15; Video Footage (DE 30-4) CORRIDOR C22 CAM 16 at 0:00:09–0:00:50, CORRIDOR J2 CAM2 at 0:00:11–0:00:40; see also Incident Report (DE 30-5) at 1).[3] Hutchinson, Connor, and Jones responded to the assault. (Gray Aff. (DE 30-1) ¶¶ 17, 35, 46; Def. Aff. (DE 30-6) ¶ 5; Hutchinson Aff. (DE 30-7) ¶ 5; Connor Aff. (DE 30-8) ¶ 5; Video Footage (DE 30-4) CORRIDOR C22 CAM 16 at 00:42–00:47, CORRIDOR J2 CAM2 at 0:00:46–0:00:50, SALLY PORT J6 CAM3 at 0:00:35–0:00:39; see also Incident Report (DE 30-5) at 1). Plaintiff and Covington were fighting in the hallway when officers responded. (Gray Aff. (DE 30-1) ¶¶ 18, 36, 47; Def. Aff. (DE 30-6) ¶ 6; Hutchinson Aff. (DE 30-7) ¶ 6; Connor Aff. (DE 30-8) ¶ 6; Video Footage (DE 30-4) CORRIDOR C22 CAM 16 at 0:00:42–0:00:47, CORRIDOR J2 CAM2 at 0:00:46–0:00:50). Both plaintiff and Covington had blood on their faces and clothes. (Gray Aff. (DE 30-1) ¶ 48; Connor Aff. (DE 30-8) ¶ 7). Hutchinson, Jones, and Connor ordered them both to stop fighting, but they did not comply. (Gray Aff. (DE 30-1) ¶¶ 19–20, 37–38, 49–50; Def. Aff. (DE 30-6) ¶¶ 7–8; Hutchinson Aff. (DE 30-7) ¶¶ 7–8; Connor Aff. (DE 30-8) ¶¶ 8–9). Hutchinson and Connor then gave two quick bursts of OC Spray to the facial areas of plaintiff and Covington. (Gray Aff. (DE 30-1) ¶¶ 21, 51; Hutchinson Aff. (DE 30-7) ¶ 9; Connor Aff. (DE 30-8) ¶ 10; Video Footage (DE 30-4) CORRIDOR C22 CAM 16 at 0:00:47–0:00:51, CORRIDOR J2 CAM2 at 0:00:50–0:00:52). Jones also gave a single quick burst of OC Spray. (Gray Aff. (DE 30-1) ¶ 40; Def. Aff. (DE 30-6) ¶ 10; Incident Report (DE 30-5) at 2).

---

[3] The relevant video recordings were filed manually with the clerk of court. (See Mar. 17, 2021, Ord. (DE 33)). The three video files are labeled "CORRIDOR C22 CAM 16," "CORRIDOR J2 CAM2," and "SALLY PORT J6 CAM3," and these labels are maintained in the citations herein.

Hutchinson and Connor then gave another directive to stop fighting, but plaintiff and Covington continued. (Gray Aff. (DE 30-1) ¶¶ 22–23, 41–42, 52–53; Def. Aff. (DE 30-6) ¶ 12; Hutchinson Aff. (DE 30-7) ¶¶ 10–11; Connor Aff. (DE 30-8) ¶¶ 11–12). Because the OC Spray was ineffective, Hutchinson and Connor took out their batons. (Gray Aff. (DE 30-1) ¶¶ 24, 43, 54; Def. Aff. (DE 30-6) ¶ 13; Hutchinson Aff. (DE 30-7) ¶ 12; Connor Aff. (DE 30-8) ¶ 13; Video Footage (DE 30-4) CORRIDOR J2 CAM2 at 0:01:01–0:01:24). Jones had not been recertified to use a baton at the time relevant to this case. (Gray Aff. (DE 30-1) ¶ 44; Def. Aff. (DE 30-6) ¶ 14).

Hutchinson and Connor gave another order to stop fighting but were again ignored. (Gray Aff. (DE 30-1) ¶¶ 25, 55; Hutchinson Aff. (DE 30-7) ¶ 13; Connor Aff. (DE 30-8) ¶ 14). Hutchinson then struck plaintiff in the right calf using a forward strike while giving another directive to stop fighting. (Gray Aff. (DE 30-1) ¶ 26; Hutchinson Aff. (DE 30-7) ¶ 16; see also Video Footage (DE 30-4) CORRIDOR J2 CAM2 at 0:01:03–0:01:25; Incident Report (DE 30-5) at 1). Connor struck plaintiff in the right knee using a forward strike while also giving the order to stop fighting. (Gray Aff. (DE 30-1) ¶ 56; Connor Aff. (DE 30-8) ¶ 15; see also Video Footage (DE 30-4) CORRIDOR J2 CAM2 at 0:01:03–0:01:25; Incident Report (DE 30-5) at 2). Both plaintiff and Covington continued fighting. (Gray Aff. (DE 30-1) ¶¶ 27, 57; Connor Aff. (DE 30-8) ¶ 16). Hutchinson then struck Covington in the left calf using a forward strike, while giving another directive to stop fighting. (Gray Aff. (DE 30-1) ¶¶ 28–29; Hutchinson Aff. (DE 30-7) ¶¶ 16–17; see also Video Footage (DE 30-4) CORRIDOR J2 CAM2 at 0:01:03–0:01:25; Incident Report (DE 30-5) at 1). Connor again struck plaintiff in his right knee. (Gray Aff. (DE 30-1) ¶ 58; Connor Aff. (DE 30-8) ¶ 17; see also Video Footage (DE 30-4) CORRIDOR J2 CAM2 at 0:01:03–0:01:25).

Plaintiff and Covington finally stopped fighting, and as they were separated, Covington dropped a small piece of red plastic. (Gray Aff. (DE 30-1) ¶¶ 30–32, 63; Hutchinson Aff. (DE 30-7) ¶¶ 18–20; Connor Aff. (DE 30-8) ¶¶ 20–22; see also Video Footage (DE 30-4) CORRIDOR J2 CAM2 0:01:25–0:01:27). Hutchinson took possession of the homemade weapon. (Gray Aff. (DE 30-1) ¶ 33; Hutchinson Aff. (DE 30-7) ¶ 21). Plaintiff was also searched, and a plastic shank was found in his hair. (Gray Aff. (DE 30-1) ¶ 66; Connor Aff. (DE 30-8) ¶ 25). At no time did defendant strike plaintiff with a baton. (Gray Aff. (DE 30-1) ¶ 45; Def. Aff. (DE 30-6) ¶ 14).

Plaintiff and Covington were decontaminated and observed for one hour after the use of OC Spray. (Gray Aff. (DE 30-1) ¶ 68). Plaintiff was then transported to the local emergency department for further treatment. (Gray Aff. (DE 30-1) ¶ 69). Upon completion of an investigation, the use of force by officers was found to be reasonable and justified to achieve the proper correctional objective. (Gray Aff. (DE 30-1) ¶ 73; Incident Report (DE 30-5) at 8).[4]

## DISCUSSION

A.   Standard of Review

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the non-moving party must

---

[4] Unless otherwise specified, page numbers specified in citations to the record in this order refer to the page number of the document designated in the court's electronic case filing (ECF) system, and not to page numbering, if any, specified on the face of the underlying document.

then "come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (internal quotation omitted).

Only disputes between the parties over facts that might affect the outcome of the case properly preclude entry of summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (holding that a factual dispute is "material" only if it might affect the outcome of the suit and "genuine" only if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party). "[A]t the summary judgment stage the [court's] function is not [itself] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249. In determining whether there is a genuine issue for trial, "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [non-movant's] favor." Id. at 255; see United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) ("On summary judgment the inferences to be drawn from the underlying facts contained in [affidavits, attached exhibits, and depositions] must be viewed in the light most favorable to the party opposing the motion.").

Nevertheless, "permissible inferences must still be within the range of reasonable probability, . . . and it is the duty of the court to withdraw the case from the [factfinder] when the necessary inference is so tenuous that it rests merely upon speculation and conjecture." Lovelace v. Sherwin–Williams Co., 681 F.2d 230, 241 (4th Cir. 1982) (quotations omitted). Thus, judgment as a matter of law is warranted where "the verdict in favor of the non-moving party would necessarily be based on speculation and conjecture." Myrick v. Prime Ins. Syndicate, Inc., 395 F.3d 485, 489 (4th Cir. 2005). By contrast, when "the evidence as a whole is susceptible of

more than one reasonable inference, a [triable] issue is created," and judgment as a matter of law should be denied. Id. at 489-90.

B.  Analysis

　　i.　　Sovereign Immunity

The court begins with plaintiff's official capacity claims alleged against defendant. The Eleventh Amendment to the United States Constitution provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State." U.S. Const. amend. XI. Thus, the Eleventh Amendment bars suits against a state or its agencies, unless the state has waived its immunity, or Congress has exercised its power under section five of the Fourteenth Amendment to override that immunity. See Will v. Michigan Dep't of State Police, 491 U.S. 58, 66 (1989); Gray v. Laws, 51 F.3d 426, 430 (4th Cir. 1995); Bright v. McClure, 865 F.2d 623, 626 (4th Cir. 1989) ("Congress has made no move to impose § 1983 liabilities upon states, and North Carolina has done nothing to waive its immunity." (citations omitted)). Eleventh Amendment immunity extends to "arm[s] of the State," Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 280 (1977), including state agencies and state officers acting in their official capacities. Gray v. Laws, 51 F.3d 426, 430 (4th Cir. 1995) (citing Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989)).

Plaintiff's official capacity claims are "in effect, . . . against the governmental entity employing [the defendants]." Nivens v. Gilchrist, 444 F.3d 237, 249 (4th Cir. 2006). As to defendant, prison officials are state officials for purposes of Eleventh Amendment sovereign immunity where a final judgment of monetary damages against them must be paid from the North

Carolina treasury. See id.; see also N.C. Gen. Stat. §§ 148-5, 143-300.6. Accordingly, any claims for monetary damages against defendant in his official capacity are barred by Eleventh Amendment immunity.[5]

    ii.    Eighth Amendment Claims

The court next addresses plaintiff's claims that defendant used excessive force against him in violation of the Eighth Amendment. The Eighth Amendment prohibits the "unnecessary and wanton infliction of pain" which constitutes cruel and unusual punishment. Whitley v. Albers, 475 U.S. 312, 319 (1986). The excessive force inquiry has an objective prong and a subjective prong. Under the objective prong, the inmate must establish that the forced used was "nontrivial" or more than "de minimis." Wilkins v. Gaddy, 559 U.S. 34, 39 (2010) (per curiam); Hudson v. McMillian, 503 U.S. 1, 10 (1992). Here, defendant Holder does not argue the use of force was nontrivial, and thus the court proceeds to the subjective component of the claim.

To satisfy the subjective prong, the inmate must show a prison official acted with a "sufficiently culpable state of mind." Wilson v. Seiter, 501 U.S. 294, 297 (1991). In an excessive force case, "the 'state of mind required is wantonness in the infliction of pain.'" Brooks v. Johnson, 924 F.3d 104, 112 (4th Cir. 2019) (quoting Iko v. Shreve, 535 F.3d 225, 239 (4th Cir. 2008)). The relevant inquiry for the subjective prong is whether the force was applied "in a good faith effort to maintain or restore discipline," or "maliciously" and "for the very purpose of causing harm." Whitley, 475 U.S. at 320-21; Brooks, 924 F.3d at 113. The "question is not whether a reasonable officer could have used force to maintain discipline, but whether these particular

---

[5] The exceptions to Eleventh Amendment immunity are not applicable here. See College Savs. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd., 527 U.S. 666, 670 (1999); Fitzpatrick v. Bitzer, 427 U.S. 445, 456 (1976); Ex parte Young, 209 U.S. 123, 159 (1908).

8

officers did use force for that reason." Brooks, 924 F.3d at 113. "Corrections officers act in a 'good faith effort to maintain or restore discipline'–that is, with a permissible motive–not only when they confront immediate risks to physical safety, but also when they attempt to 'preserve internal order' by compelling compliance with prison rules and procedures." Id. (quoting Hudson, 503 U.S. at 6-7); see also Dean v. Jones, 984 F.3d 295, 302 (4th Cir. 2021). "But corrections officers cross the line into an impermissible motive – using force 'maliciously' and for the 'very purpose of causing harm,' – when they inflict pain not to induce compliance, but to punish an inmate for intransigence or to retaliate for insubordination." Brooks, 924 F.3d at 113 (quoting Whitley, 475 U.S. at 320-21); see also Williams v. Benjamin, 77 F.3d 756, 765 (4th Cir. 1996).

At the summary judgment stage, "the inquiry under the subjective component boils down to whether a reasonable jury could determine that an officer acted with malice, applying force punitively and 'for the very purpose of causing harm.'" Dean, 984 F.3d at 302 (quoting Whitley, 475 U.S. at 320-21). The officers' subjective motive may be proved through direct or circumstantial evidence. Id. at 308-09; Brooks, 924 F.3d at 114-16. With respect to circumstantial evidence, the court considers four factors "from which . . . inferences may be drawn as to the officers' motives." Brooks, 924 F.3d at 116. These factors are: "(1) 'the need for the application of force'; (2) 'the relationship between the need and the amount of force that was used'; (3) the extent of any reasonably perceived threat that the application of force was intended to quell; and (4) 'any efforts made to temper the severity of a forceful response.'" Dean, 984 F.3d at 302 (quoting Whitley, 475 U.S. at 321).

Here, plaintiff's claim against defendant is premised on conclusory allegations that

9

defendant used excessive force by striking him with a baton. (Compl. (DE 1) at 5). Plaintiff's assertions are far too conclusory to create a genuine issue of fact. Moreover, plaintiff has failed to present any verified evidence.[6] See Sedar v. Reston Town Ctr. Prop., LLC, 988 F.3d 756, 761 (4th Cir. 2021) ("[T]he nonmoving party, to survive the motion for summary judgment, must demonstrate specific, material facts that give rise to a genuine issue." (citing Celotex, 477 U.S. at 323)). In fact, the undisputed evidence instead establishes that defendant did not strike plaintiff with a baton as alleged. (See Gray Aff. (DE 30-1) ¶¶ 44–45; Def. Aff. (DE 30-6) ¶ 14; see also Incident Report (DE 30-5) at 2). Accordingly, plaintiff has not established a genuine issue of material fact precluding summary judgment on his Eighth Amendment excessive force claim.

## CONCLUSION

Based on the foregoing, defendant's motion for summary judgment (DE 27) is GRANTED. The clerk is DIRECTED to close this case.

SO ORDERED, this the 10th day of March, 2022.

_____
LOUISE W. FLANAGAN
United States District Judge

---

[6] As the court previously has explained to plaintiff, he cannot rely on unverified allegations in his statement of material facts or responsive briefing to create a triable issue of fact. See Fed. R. Civ. P. 56(c); Celotex, 477 U.S. at 324; (See Roseboro Notice (DE 32)). Accordingly, the court does not consider plaintiff's unverified allegations in resolving defendants' motion for summary judgment.